IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUENTIN T. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-700 (MN) |
| | ) |
| CORPORAL MICHAEL STANFORD, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Quentin T. Jones, Pro Se Plaintiff.

Allison Jean McCowan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendant.

February 10, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Quentin T. Jones ("Plaintiff" or "Jones"), an inmate at James T. Vaughn Correctional Center, proceeds *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5). He commenced this action on May 9, 2018. (D.I. 3). The operative pleading consists of Docket Items 3, 7, 8, 9, and 10.[1] (*See* D.I. 20 at 2). Plaintiff alleges retaliation by Defendant Corporal Michael Stanford ("Defendant" or "Stanford").[2] Presently before this Court are the parties' cross-motions for summary judgment and Plaintiff's request for counsel. (D.I. 40, 44, 50). Briefing is complete.

**I.    BACKGROUND**

As alleged in the operative pleading, Plaintiff received a disciplinary infraction on April 3, 2018 for gambling, failure to obey an order, and abuse of job privileges. He alleges that the disciplinary ticket contained incorrect information and was not warranted. Plaintiff pled not guilty to the infractions. During a hearing two weeks later, Plaintiff was found guilty. He appealed. On April 20, 2018, Plaintiff spoke to Defendant and Staff Lt. Sennett ("Sennett") about nullification of the disciplinary report on appeal, and on April 23, 2018, the disciplinary report was nullified.

Upon receipt of the infraction, Plaintiff was terminated from his prison job as a barber, and complains that, at the very least, he should not have been suspended while the disciplinary matter

---

[1]   Plaintiff filed "supplements" to the amended complaint on April 13 and 17, 2020. (*See* D.I. 47, 48). Plaintiff did not seek leave to append the operative pleading and while the documents are not considered as part of the operative pleading, they will be considered should they be relevant when ruling on the cross-motions for summary judgment.

[2]   Plaintiff named a number of defendants and raised a number of claims. With the exception of the retaliation claim against Stanford, all other Defendants and claims have been dismissed.

1

was pending. Approximately one week after he was terminated from his barber position, Plaintiff was transferred from the workers' tier to the non-workers' tier. Plaintiff informed multiple Department of Correction ("DOC") personnel of the events and was reinstated to his position as a barber in late September 2018. Plaintiff alleges that he was issued a false disciplinary report by Stanford on September 25, 2018 in retaliation for Plaintiff's grievances against Stanford that complained Stanford caused Plaintiff to lose his job in April.

## II. FACTS PRESENTED BY THE PARTIES

The following facts are undisputed. (*Compare* D.I. 42 to D.I. 52).

On April 3, 2018, Plaintiff worked as a barber in Building Delta-West ("D-West") at JTVCC and on that date was served with a disciplinary report for violating several inmate housing rules violations. (D.I. 42 ¶ 1; D.I. 52 ¶ 1). The above incident leading to the disciplinary report involved NBA betting slips being placed into Plaintiff's shirt pocket by inmate Ramon Ruffin ("Ruffin"). (D.I. 42 ¶ 2; D.I. 52 ¶ 2). Ruffin's actions were seen by Lt. Yvette Spencer ("Spencer") and Defendant, who at the time was the officer-in-charge for D-West. (D.I. 42 ¶ 3; D.I. 52 ¶ 3). Defendant's duties included staff supervision, policy enforcement and maintaining inmate payroll. (D.I. 42 ¶¶ 3, 4). Upon seeing the interaction between Plaintiff and Ruffin, the inmates were taken to the Sergeant's office where Spencer ordered Plaintiff to empty his pockets, Plaintiff complied, and in his possession were several NBA betting slips for an April 3, 2018 game. (D.I. 42 ¶¶ 6, 7; D.I. 52 ¶¶ 5, 7, 8).

Spencer ordered Defendant to terminate Plaintiff's employment as a barber and to issue a disciplinary report to Plaintiff and Ruffin for allegedly violating inmate housing rules. (D.I. 42 ¶ 8; D.I. 52 ¶ 9). Plaintiff received the disciplinary report on April 3, 2018 at approximately 1:00 p.m. (D.I. 52 ¶ 10). Departmental and institutional policy and procedure require that a disciplinary hearing be conducted within seven days following issuance and receipt of the disciplinary report. (D.I. 42 ¶ 9; D.I. 52 ¶ 11). Hearing officer Spencer did not conduct the hearing until two weeks later. (D.I. 42 ¶ 10; D.I. 52 ¶ 12). Plaintiff was present and testified on his own behalf at the hearing and was found guilty on all three charges. (D.I. 42 ¶ 11; D.I. 52 ¶ 13). Plaintiff filed a timely appeal and was notified on April 23, 2018 that the disciplinary report and finding of guilt were nullified due to the procedural error of failing to timely conduct a hearing. (D.I. 42 ¶ 12; D.I. 52 ¶ 14). Following the nullification of the disciplinary action, Plaintiff submitted a grievance on April 26, 2018, seeking reinstatement as a D-West barber or "any job deemed necessary" by the DOC. (D.I. 42 ¶ 13; D.I. 52 ¶ 15). The grievance was investigated but no informal resolution was achieved at that time. (*Id.*). Plaintiff

appealed the grievance to the next level – the resident grievance committee – and on August 24, 2018, the resident grievance committee unanimously recommended Plaintiff's placement in the inmate work pool until a job became available. (D.I. 42 ¶¶ 15-16; D.I. 52 ¶ 16). Plaintiff appealed, and the decision was upheld with recommendation for Plaintiff's reinstatement as a barber at D-West.[3] (D.I. 42 ¶¶ 16; D.I. 52 ¶ 16).

On or about September 25, 2018, Jones was reinstated as the D-West barber and spoke to Defendant about the April 3, 2018 betting slips incident. (D.I. 42 ¶¶ 17, 18; D.I. 52 ¶ 18). C/O Michael Hawkins ("Hawkins") was present during the conversation. (D.I. 42 ¶ 19; D.I. 52 ¶ 19). As Hawkins escorted Plaintiff to his housing unit, Plaintiff told Hawkins that he was writing up Defendant for threatening to again terminate his barber job. (D.I. 42 ¶ 20; D.I. 52 ¶ 20). Based on what Hawkins observed as an eyewitness and what Plaintiff stated to Hawkins, Hawkins issued a Plaintiff a disciplinary report for disrespect, failing to obey an order, and lying. (D.I. 42 ¶ 21; D.I. 52 ¶ 21). Plaintiff was served with the disciplinary report and at or about the same time, submitted the threatened grievance against Defendant, and alleged that Defendant had threatened to fire Plaintiff in retaliation for prior grievances. (*Id.*).

On or about October 15, 2018, Plaintiff submitted two more grievances again complaining of alleged retaliation by Defendant. (D.I. 42 ¶ 22; D.I. 52 ¶ 22). Around the same time that Plaintiff submitted the grievances alleging retaliation by Defendant, Defendant received two letters authored by unknown/anonymous inmates. (D.I. 42 ¶ 24; D.I. 52 ¶ 23). One letter complained of Plaintiff's unprofessional barber conduct. (*Id.*). The other warned Defendant that Plaintiff was complaining about Defendant and was planning on filing fabricated incidents allegedly citing to Defendant's harassment of Plaintiff in an effort to either have Defendant disciplined or to obtain Plaintiff's transfer to another housing unit. (*Id.*). Plaintiff was transferred to D-East in late October 2018 by Major Brennan, who also installed Plaintiff as the D-East barber. (*Id.*).

According to Defendant, his understanding is that the resident grievance committee recommended upholding Plaintiff's grievance and placing Plaintiff in the inmate work pool for consideration of future jobs as they became available; not that Plaintiff was automatically reinstated as a barber. (*Id.* at 5). Plaintiff appealed the recommendation, Major Brennan amended it, and ordered Plaintiff's reinstatement as D-West's barber. (*Id.*). According to

---

[3]    According to Plaintiff, Defendant refused to follow the decision and reinstate him. (*See* D.I. 43 at 19, grievance appeal form, submitted September 18, 2018).

3

Defendant, the order to reinstate Plaintiff to the barber position was not implemented until approximately September 25, 2018 when the time to appeal to the next level had expired. (*Id*.). Once Defendant was notified that Brennan's order had not been appealed, Defendant immediately reinstated Plaintiff to the barber position and the inmate who had held the position was placed back in the work pool. (*Id*.).

Plaintiff and Defendant provide differing accounts of their September 25, 2018 interaction. According to Plaintiff's grievance, while discussing Plaintiff's reinstatement as a barber Defendant stated, "you were not innocent at the time of your job termination back in April 3, 2018. I know you were guilty and I better not hear any complaints. If I do you are fired." (D.I. 43 at 22). The grievance states, Defendant "threaten [sic] to fire me by retaliation prior to my previous position reinstatement." (*Id*.). Plaintiff asked that Defendant be reprimanded by his superiors for conduct of "retaliation" towards Plaintiff for threatening to fire him prior to his reinstatement to the barber position. (*Id*.). The grievance also states that Defendant directed Hawkins to lodge a frivolous disciplinary action against Plaintiff and that Plaintiff submitted documentation to internal affairs on September 10, 2018, in relation to Defendant retaliating against him in some form. (*Id.* at 23). The grievance states that Plaintiff had a conversation with his counselor that he knew Defendant would retaliate against him once he was reinstated to his barber position. (*Id*.).

According to Defendant, he "respectively listened" to Plaintiff for a short time, advised Plaintiff that the earlier matter was in the past, and "we were moving forward." (*Id*.). Defendant reminded Plaintiff that he was expected to comply with all the rules governing inmate conduct and attempted to leave while Plaintiff continued to attempt to converse with Defendant, whereupon Defendant repeated his earlier remarks. (*Id*.).

4

Following the September 25, 2018 interaction, Hawkins charged Plaintiff with disrespect, lying, and failing to obey an order. (D.I. 43 at 21). The disciplinary report states that Hawkins was present during the conversation between Plaintiff and Defendant, that he believed Plaintiff was falsely accusing Defendant of harassment possibly for Plaintiff to be moved from the building, that Defendant was respectful in letting Plaintiff know that he was reinstated to the barber position and respectfully let Plaintiff know that he had to follow rules. (*Id.*). In the disciplinary report Hawkins states that "at no time did [Defendant] threaten [Plaintiff] or his job during their conversation." (*Id.*). Plaintiff was found not guilty of the violations. (*Id.* at 31).

According to Defendant, he was unaware of the simultaneous filings of Plaintiff's grievance and Hawkins' disciplinary write-up. (*Id.*). Defendant states that he did not discuss or suggest the write-up with Hawkins and was not aware of its content. (*Id.*). Nor was Defendant aware of this lawsuit until long after its filing. (*Id.*). Defendant states that he had no adversarial incidents with Plaintiff from April 3, 2018 on and states that he "made a conscious effort to avoid any contact with Plaintiff that might otherwise be construed by Plaintiff as harassment or lend itself to Plaintiff submitting complaints against Defendant. (*Id.* at 6).

Defendant states that in late September and early October 2018 he received two letters from unknown/anonymous inmates. (*Id.*). The first advised Defendant of Plaintiff's unprofessional barbering conduct, and the second advised Defendant to take heed of Plaintiff's plan to have Defendant disciplined by his superior officers for alleged harassment of Plaintiff and warned Defendant that Plaintiff planned to fabricate serious and perhaps criminal acts by Defendant against Plaintiff. (*Id.*).

On October 15, 2018, Plaintiff submitted two more grievances complaining of actions by Defendant. Grievance 423914 complained that Defendant allowed certain inmates to perform

5

staff duties and states that Defendant might inform the inmates connected with the investigation of Plaintiff's grievance in the hopes of causing a conflict between Plaintiff and the other inmates. (*Id*. at 32). Grievance 423915 states that Plaintiff received permission from the education staff to be excused 15 minutes early to perform his barber duties and, after his request was granted, Defendant did not allow Plaintiff to perform his duties in the hopes of causing conflict between Plaintiff and other inmates. (*Id.* at 42).

### III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, this Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The nonmoving party bears the burden to establish the existence of each element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson*, 477 U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989). The same standards and burdens

apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

Defendant moves for summary judgment on the grounds that: (1) the retaliation claim fails as a matter of law; (2) the retaliation claim is barred by the Eleventh Amendment; and (3) the claims are barred by the doctrine of qualified immunity. (D.I. 41). It is not clear what grounds Plaintiff relies upon in seeking summary judgment, but they appear to rest upon the theory that inmates, who did not like him, secretly set him up by sending anonymous notes with complaints about Plaintiff. (D.I. 51).

## IV. DISCUSSION

### A. Retaliation

Upon screening, Plaintiff was allowed to proceed against Defendant on a retaliation claim based upon the filing of an alleged September 25, 2018 false disciplinary report following grievances Plaintiff had submitted complaining of alleged acts by Defendant. In Plaintiff's supporting brief, he does not discuss the retaliation claim based upon the September 25, 2018 grievance. Instead he focuses upon October 2018 letters written by anonymous inmates that were given to Defendant and argues the inmates were secretly setting him up prior to Defendant being advised or provided with the anonymous notes and the DOC did not take adequate steps to abate the situation. (D.I. 51). Plaintiff also refers to the October 2018 anonymous letters and his October 2018 grievances that again complain of retaliation in his response to Defendant's concise statement of facts, making it seem that he attempts to raise a new retaliation claim based upon the October 2018 grievances. (D.I. 52 ¶¶ 18-20). In doing so, Plaintiff impermissibly attempts to expand upon the original allegations with what appears to be a new claim through argument in his brief. *See Dewees v. Haste*, 620 F. Supp. 2d 625, 635 (M.D. Pa. 2009).

7

Federal pleading standards do not allow a party "to raise new claims at the summary judgment stage . . . . Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint." *Id*. at n.7 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."). In addition, a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) (quoting *Shanahan v. City of Chicago.*, 82 F.3d 776, 781 (7th Cir. 1996)).

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). In order to establish a retaliation claim Plaintiff must show that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected activity was a substantial or motivating factor in the decision to discipline him. *See Watson v. Rozum*, 834 F.3d 417, 420 (3d Cir. 2016). The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

Plaintiff has met two elements of a retaliation claim. His submission of the April 26, 2018 grievance complaining of the loss of his barber job is considered protected activity, and the issuance of the September 25, 2018 disciplinary report is an adverse action. As to the third prong, the record evidence does not support a finding that the protected activity was a substantial or motivating factor in the issuance of the disciplinary report.

First, the temporal proximity of five months from the time Plaintiff submitted the April 26, 2018 grievance to the time Plaintiff received the September 25, 2018 disciplinary report cannot be said to be so close as to be unusually suggestive. *See DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010) (denying prisoner's retaliation claim, as three months temporal proximity was not unusually suggestive); *see also Keeling v. Barrager*, Civ. A. No. 4:CV-11-0365, 2014 WL 1338077, at *9 (M.D. Pa. Apr. 3, 2014) (explaining that courts in civil rights cases have frequently rejected efforts to infer causation from temporal proximity when a span of weeks, months, or years separates the plaintiff's constitutionally protected activity and the defendant's alleged retaliatory conduct), *aff'd*, 666 F. App'x 153 (3d Cir. 2016). Nor has Plaintiff shown a pattern of antagonism, coupled with timing, to establishing causation for his retaliation claim. Although Plaintiff's grievance appeal stated that Defendant refused to reinstate Plaintiff to his barber position after the April 3, 2018 disciplinary write-up was nullified, it is unrefuted that Defendant immediately reinstated Jones to the barber position once he was notified that there were no further appeals of the grievance.

In addition, the undisputed record evidence is that Defendant did not author the September 25, 2018 disciplinary ticket. It was prepared by Hawkins who witnessed the exchange between Plaintiff and Defendant. It is also unrefuted that Defendant was unaware that Hawkins had filed a disciplinary report, was unaware of its content, was unaware that Plaintiff had submitted a grievance the same day, and was unaware Plaintiff had commenced this action until it was brought to his attention. Plaintiff's reliance on the two October 25, 2018 grievances is not relevant. The grievances were submitted after September 25, 2018, making it impossible for Defendant to retaliate because of grievances Plaintiff had not yet submitted.

No reasonable jury could find for Plaintiff on the retaliation claim. This Court, therefore, will grant Defendant's motion for summary judgment and will deny Plaintiff's motion for summary judgment.

### B.     Eleventh Amendment

Defendant moves for summary judgment to the extent the claims are raised against him in his official capacity. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Accordingly, § 1983 claims for monetary damages against a state official in his official capacity are barred by the Eleventh Amendment. *See id.* Thus, any official capacity claims against Defendant seeking

monetary relief are barred by the Eleventh Amendment. And the Court will grant Defendant's motion for summary judgment on those claims.

V.  **CONCLUSION**

For the above reasons, this Court will: (1) grant Defendant's motion for summary judgment (D.I. 40);[4] (2) deny Plaintiff's request for counsel (D.I. 44); and (3) deny Plaintiff's motion for summary judgment (D.I. 50).

An appropriate order will be entered.

---

[4] This Court does not address qualified immunity having determined summary judgment for Defendant is appropriate on other grounds.

11